United States District Court
Southern District of Texas
**ENTERED**
July 31, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DERRICK MORRIS, | § | |
| TDCJ #2082536, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. H-19-4189 |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice - Correctional | § | |
| Institutions Division, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

Derrick Morris has filed a Petition for a Writ of Habeas Corpus by a Person in State Custody under 28 U.S.C. § 2254 ("Petition")(Docket Entry No. 1), challenging a conviction that was entered against him in Harris County, Texas. Morris has also provided Petitioner's Memorandum of Law in Support of His 2254 Application for Writ of Habeas Corpus ("Petitioner's Memorandum") (Docket Entry No. 2). Now pending is Respondent's Motion for Summary Judgment with Brief in Support ("Respondent's MSJ") (Docket Entry No. 11). Morris has filed a Traverse in response (Docket Entry No. 15). After considering all of the pleadings, the state court record, and the applicable law, the court will grant Respondent's MSJ and dismiss this action for the reasons explained below.

## I.  Background

A  grand  jury  returned  an  indictment  against  Morris  in Harris County Case No. 1454000, charging him with assault involving domestic violence.[1]  A person commits assault if he intentionally, knowingly, or recklessly causes bodily injury to another.  See Tex. Penal Code § 22.01(a)(1).  The offense is elevated for purposes of punishment from a Class A misdemeanor to a third-degree felony if the assault involves domestic violence against a family member, household member, or someone with whom the assailant is involved in a romantic or "dating relationship" as defined by §§ 71.003, 71.005,  or  71.0021(b)  of  the  Texas  Family  Code.  See  id. § 22.01(b)(2).  The offense is elevated to a second-degree felony if  it  is  shown  at  trial  that  the  defendant  had  a  previous conviction  for  assault  involving  domestic  violence.  See  id. § 22.01(b-3).

The indictment against Morris in Case No. 1454000 was enhanced for purposes of punishment with allegations that he was a repeat offender with a prior conviction for assault involving domestic violence and that he also had two other felony convictions for aggravated assault and retaliation.[2]  The complainant, with whom Morris had a romantic relationship, testified at trial that Morris approached her while she was waiting for the bus and forced her

---

[1]See Indictment, Docket Entry No. 12-26, p. 68.  For purposes of  identification,  all  page  numbers  refer  to  the  pagination imprinted by the court's Electronic Case Filing ("ECF") system.

[2]Id.

into his car because he was angry with her.[3]  He then punched her
repeatedly and threatened to kill her, placing her in fear for her
life until she was able to escape.[4]  A jury in the 232nd District
Court for Harris County found Miller guilty as charged of assault
involving domestic violence.[5]

During the punishment phase of the trial, the State presented
evidence that Morris had several prior convictions.[6] One of those
convictions was for assault involving domestic violence that
occurred in 2007 against Nicole Miller, who testified that she and
Morris were "common-law married."[7]  Although Miller denied that
Morris assaulted her and attempted to blame the attack on an
"unknown" assailant,[8] the State presented her prior written
statement to police, which described a brutal assault.[9]  The State
also presented evidence that Morris had pled guilty to the charges
of assault involving domestic violence against Miller,[10] in which

---

[3]Court Reporter's Record, vol. 3, Docket Entry No. 12-17,
pp. 86-90.

[4]See id. at 90-92.

[5]Court Reporter's Record, vol. 4, Docket Entry No. 12-18, p. 4.

[6]Id. at 13-15.

[7]Court Reporter's Record, vol. 5, Docket Entry No. 12-19,
pp. 4-5.

[8]Id. at 5-6.

[9]Id. at 25-27.

[10]Judgment of Conviction by Court - Waiver of Jury Trial, Case
No. 1153551, Docket Entry No. 12-22, p. 68.

-3-

she was hospitalized with a broken arm and severe facial injuries.[11]
In addition, the State presented evidence that Morris had been
charged with aggravated kidnapping in a case that involved another
former girlfriend, Aurtedshia Williams.[12]   Although Williams
testified that she "did not remember" the incident,[13] the State
presented testimony from a police officer who responded to
Williams's report that she had been kidnapped by Morris and noted
that she was injured.[14] At the close of the punishment proceeding,
the jury found that the enhancement allegations listed in the
indictment were true and sentenced Morris to 50 years'
imprisonment.[15]

On direct appeal Morris argued that (1) the trial court erred
by denying his motion for a mistrial during the punishment phase of
the trial after the State violated Brady v. Maryland, 83 S. Ct.
1194 (1963), by failing to disclose an affidavit from Miller, in
which she stated that she did not want to pursue charges against
Morris and attempted to recant her accusation of assault against
him; and (2) the trial court erred by allowing the State to call

---

[11]Court Reporter's Record, vol. 5, Docket Entry No.12-19,
pp. 7, 12, 26.

[12]Court Reporter's Record, vol. 4, Docket Entry No. 12-18,
pp. 74-75.

[13]Id.

[14]Id. at 78.

[15]Judgment of Conviction by Jury, Docket Entry No. 12-26,
p. 75.

Miller as a witness solely to impeach her testimony with a prior inconsistent statement about whether Morris had assaulted her previously.[16]    An intermediate court of appeals rejected both arguments after summarizing the evidence and issues raised by Morris, as follows:

> The complainant, S. Rose, worked as a teacher in Harris County. Although appellant Derrick Morris had a common-law marriage with another woman, Rose dated him for over two years before they ended their relationship. About three months later, Morris called Rose numerous times while she was at work.   Rose left work without answering the phone calls.   After leaving work, while Rose was waiting at a bus stop, Morris approached in his car and got out.   He punched Rose and forced her into the car. Morris punched Rose several more times in the car, and he threatened to kill her.
>
> Afraid for her life, Rose jumped out of the moving car and ran across an open field to a discount store.   Morris followed in his vehicle, across the field, and then he chased her on foot into the store.   At the store, several bystanders intervened and stopped Morris from removing Rose from the store.   Morris then fled the scene before police arrived.
>
> A grand jury indicted Morris for the offense of assault on a family member, second offense.   The indictment included two enhancement paragraphs alleging that Morris previously had been convicted of aggravated assault and retaliation.   After a trial on the merits, a jury convicted Morris of assault on a family member.
>
> During the trial's punishment phase, the State called several witnesses to testify about Morris's previous felony convictions.   A fingerprint expert testified that Morris's fingerprints matched those found on the judgments, including a previous conviction for assault on a family member in 2007.
>
> Following the testimony of the fingerprint expert, the State called Morris's common-law wife, Nicole Miller, to

---

[16]Brief for Appellant, Docket Entry No. 12-7, p. 9.

testify about her role in the 2007 conviction for assault on a family member.  Miller initially testified that an unknown assailant attacked her and that when interviewed in the hospital following the assault, she told police it was an unknown person.  The State then asked if she ever told the police a different story. Defense counsel objected, contending that the State had called Miller solely for the purpose of impeaching her with a prior inconsistent statement.  The trial court overruled this objection, and the State asked to designate Miller as a hostile witness. Miller testified that she had given a statement to the police alleging that Morris was the attacker.  She further testified that the reason she told police that Morris attacked her was because she "was upset" and had "found out he had moved on, was happy," while she "was not."  Miller affirmatively stated that Morris never attacked her.

On cross-examination, Miller testified about her relationship with Morris and how much he meant to her. She also testified that she gave a written statement to the police about the assault in 2007.  On redirect examination, the State offered into evidence the written statement, dated November 13, 2007, in which Miller alleged that Morris was the person who attacked her.

In addition to Miller, the State called several other witnesses during the punishment phase.  The complainant, Rose, and her mother testified about an incident that occurred after the charged offense.  Morris came to Rose's apartment, kicked in the door, and threatened them with a gun.  The State also called several police officers who testified about other criminal investigations involving Morris.

While the jury deliberated on punishment, Morris moved for a mistrial based on an alleged Brady violation.  He argued that the State had withheld another statement written by Miller about the 2007 assault, an affidavit dated May 23, 2008, as well as a Brady notice filed in the course of the prosecution of that offense.  The Brady notice disclosed that in an August 21, 2007 conversation with a police officer, Miller "insisted" that Morris "did not assault her, that she was robbed by an unknown person and wanted nothing more to do with the case."  In the 2008 affidavit, Miller averred that Morris was not the person who attacked her in 2007.  The affidavit included Miller's reasons why she told the police Morris had attacked her.  These reasons included, among others, that

-6-

she was "depressed," she "blamed him for what happened"
to her, and she "wanted him to feel the same way." After
a hearing, the trial court denied Morris's motion for a
mistrial.

<u>Morris v. State</u>, 530 S.W.3d 286, 288-89 (Tex. App. — Houston [1st
Dist.] 2017).[17]   Thereafter, the Texas Court of Criminal Appeals
refused Morris's petition for discretionary review.

Morris challenged his conviction by filing an Application for
a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction
Under [Texas] Code of Criminal Procedure, Article 11.07 ("State
Habeas Application") with the trial court.[18]   Morris argued that he
was entitled to relief because he was denied effective assistance
of counsel when his trial attorney failed to: (1) "raise [a] <u>Brady</u>
violation against the State" regarding Miller's affidavit;
(2) "conduct an independent investigation into the facts of the
case" where Miller's prior statements were concerned; (3) object to
Miller's testimony about her prior "inconsistent statements"; and
(4) "file any motion in limine" to exclude evidence of his prior
"bad acts."[19]   The state habeas corpus court entered findings of
fact and concluded that Morris was not entitled to relief on any of
his claims.[20]   The Texas Court of Criminal Appeals agreed and denied

---

[17]Judgment and Opinion, Docket Entry No. 12-3, pp. 1-21.

[18]State Habeas Application, Docket Entry No. 12-24, pp. 5-22.

[19]<u>Id.</u> at 10-16.

[20]State's Proposed Findings of Fact, Conclusions of Law, and
Order ("Findings and Conclusions"), Docket Entry No. 12-26, pp. 37-
42.

-7-

relief without a written order based on the state habeas corpus court's findings.[21]

Morris now contends that he is entitled to federal habeas relief from his conviction under 28 U.S.C. § 2254 for the following reasons:

1. He was denied effective assistance of counsel when his trial attorney failed to object when the State called a witness to impeach Nicole Miller as a "subterfuge to introduce inadmissible evidence during punishment."

2. The Texas Court of Criminal Appeals unreasonably upheld the denial of his motion for mistrial based on a Brady violation during the punishment phase of the trial.

3. The state habeas corpus court unreasonably held that trial counsel was not ineffective for failing to conduct an independent investigation of the facts of the case.

4. He was denied effective assistance when his trial counsel failed to object to "extraneous offense evidence" during the punishment phase by arguing that the prejudice outweighed its probative value.[22]

The respondent argues that Morris's ineffective-assistance claims (Claims 1, 3, and 4) are procedurally barred because he now includes several new legal theories and supporting facts that were

---

[21]Action Taken on Writ No. 90,126-01, Docket Entry No. 12-24, p. 1.

[22]Petition, Docket Entry No. 1, pp. 6-7. The court notes that Morris proceeds pro se in this case. As such, the court has construed all of his pleadings under a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 92 S. Ct. 594, 596 (1972) (per curiam); see also Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) ("A document filed pro se is 'to be liberally construed[.]'") (quoting Estelle v. Gamble, 97 S. Ct. 285, 292 (1976)).

not presented previously or exhausted in state court as required before seeking federal review.[23] The respondent argues further that all of Morris's claims are without merit and that he is not entitled to relief.[24]

## II. Standard of Review

A habeas corpus petition filed by a state prisoner may not be granted in federal court unless the petitioner has first "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). Where a petitioner's claims have been adjudicated on the merits in state court, a federal habeas corpus court may not grant relief unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States[.]" 28 U.S.C. § 2254(d)(1). Likewise, if a claim presents a question of fact, a petitioner cannot obtain federal habeas relief unless he shows that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

The legal standard established by § 2254(d) "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 139

---

[23]Respondent's MSJ, Docket Entry No. 11, pp. 6-10.

[24]Id. at 11-30.

-9-

S. Ct. 504, 506 (2019).  Under this highly deferential standard, "[a] state court's decision is deemed contrary to clearly established federal law if it reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." Matamoros v. Stephens, 783 F.3d 212, 215 (5th Cir. 2015) (citations and internal quotation marks omitted). To constitute an "unreasonable application of" clearly established federal law, a state court's holding "must be objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald, 135 S. Ct. 1372, 1376 (2015) (quoting White v. Woodall, 134 S. Ct. 1697, 1702 (2014)).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  Id. (quoting Harrington v. Richter, 131 S. Ct. 770, 786-87 (2011)).

A state court's factual determinations are also entitled to "substantial deference" on federal habeas corpus review. Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015); Wood v. Allen, 130 S. Ct. 841, 849 (2010) (noting that "a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance").  A state court's findings of fact are "presumed to be correct" unless

-10-

the petitioner rebuts those findings with "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).  The presumption of correctness extends not only to express factual findings, but also to implicit or "'unarticulated findings which are necessary to the state court's conclusions of mixed law and fact.'" <u>Murphy v. Davis</u>, 901 F.3d 578, 597 (5th Cir. 2018) (quoting <u>Valdez v. Cockrell,</u> 274 F.3d 941, 948 n.11 (5th Cir. 2001)).

### III.  <u>Discussion</u>

#### A.  The <u>Brady</u> Claim (Claim 2)

Morris contends that the trial court erred by failing to grant a mistrial based on his objection that the State violated <u>Brady v. Maryland,</u> 83 S. Ct. 1194 (1963), by failing to disclose an affidavit from Miller, which stated that she did not wish to pursue the charges that resulted in Morris's previous conviction for assault involving domestic violence.[25]  The respondent argues that this claim is meritless for the same reasons articulated by the intermediate state court of appeals that rejected it on direct appeal and that Morris is not entitled to relief under the legal standard found in 28 U.S.C. § 2254(d).[26]

To prove a <u>Brady</u> claim, a petitioner "must show three things: (1) the evidence at issue is favorable to the defense, either because it is exculpatory or impeaching, (2) the prosecution

---

[25]Petition, Docket Entry No. 1, p. 6; Memorandum, Docket Entry No. 2, pp. 13-14.

[26]Respondent's MSJ, Docket Entry No. 11, pp. 24-30.

suppressed the evidence, and (3) the evidence is material." <u>Murphy v. Davis</u>, 901 F.3d 578, 597 (5th Cir. 2018) (citing <u>United States v. Brown</u>, 650 F.3d 581, 587-88 (5th Cir. 2011)).   "Suppressed evidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" <u>Id.</u> (quoting <u>United States v. Bagley</u>, 105 S. Ct. 3375, 3383 (1985)).

In conducting its review under the deferential standard found in 28 U.S.C. § 2254(d), this court looks to the last reasoned state judgment that considered and rejected the petitioner's federal claim.  <u>See Ylst v. Nunnemaker</u>, 111 S. Ct. 2590, 2594 (1991); <u>see also Wilson v. Sellers</u>, 138 S. Ct. 1188, 1193-94 (2018).   Morris's <u>Brady</u> claim was rejected previously by the intermediate state court of appeals, which addressed the issue at length and concluded that Miller's affidavit was not "material" for purposes of making a <u>Brady</u> claim.   <u>Morris v. State</u>, 530 S.W.2d 286, 294 (Tex. App. — Houston [1st Dist.] 2017, pet. ref'd).   This court will not repeat the lengthy discussion articulated by the state court of appeals, which is set forth in the published opinion that affirmed Morris's conviction and in Respondent's MSJ.[27]  It is sufficient to note that the court of appeals held that the affidavit was not material and that there was no <u>Brady</u> violation because the jury was presented with the same information during Miller's testimony:

_____

[27]<u>Id.</u> (quoting <u>Morris,</u> 530 S.W.3d at 290-94 (numerous internal footnotes omitted)).

The jury was presented with materially the same information through Miller's testimony disputing Morris's identity as her attacker as was also contained in her affidavit. []   Considering the marginal additional value of the affidavit as balanced against the entire body of evidence informing the jury's punishment determination, including evidence that Morris pleaded guilty to the charge that he assaulted Miller, we hold that there was not a 'reasonable probability' that the outcome of the punishment phase would have been different had the affidavit been available to the defense for use at trial. []   When suppressed <u>Brady</u> material had no reasonable probability of affecting the trial, it was not 'material' in the sense relevant to <u>Brady</u>. []   We conclude that the unavailability of Miller's 2008 affidavit to the defense did not undermine the fairness of the trial or confidence in the outcome.   Thus the trial court did not abuse its discretion in denying a mistrial, and we overrule Morris's first issue.

<u>Morris,</u> 530 S.W.3d at 294 (footnotes omitted).

The record reflects that Morris, who was common-law married to Miller at the time of his trial, likely knew that Miller had recanted her allegations of assault against him in connection with the charges that were filed against him previously.  As the State noted in response to trial counsel's <u>Brady</u> objection, it was no secret that Morris was initially charged with aggravated assault involving serious bodily injury to Miller in that case, but that those charges were ultimately reduced to a Class A misdemeanor assault involving domestic violence due to Miller's lack of cooperation during the prosecution.[28]

More importantly, the record confirms that Miller insisted multiple times during her testimony that the attack perpetrated by

---

[28]Court Reporter's Record, vol. 6, Docket Entry No. 12-20, pp. 4-5.

Morris was committed by an "unknown assailant" and that Morris "never" assaulted her, despite her prior inconsistent statements to police and the fact that Morris pled guilty to the charges against him for assault involving domestic violence.[29]   Based on this record, Morris does not demonstrate that there is a reasonable probability that the result of his trial would have been different if Miller's affidavit, which contained the same sentiments expressed during her testimony, had been disclosed to the defense before trial and he does not show that the information contained in that document was material for purposes of a <u>Brady</u> claim.   <u>See</u> <u>Murphy,</u> 901 F.3d at 598 ("If the evidence provides only incremental impeachment value, it does not rise to the level of <u>Brady</u> materiality.") (quoting <u>Miller v. Dretke,</u> 431 F.3d 241, 251 (5th Cir. 2005)).   Morris does not otherwise show that the state court's decision to reject his claim was contrary to or an unreasonable application of <u>Brady.</u>   Therefore, he is not entitled to relief on this claim.

**B.   Several Ineffective-Assistance Claims are Procedurally Barred**

The respondent notes that Morris did not raise all of the arguments and allegations that he presents in support of his claims for ineffective assistance of counsel (Claims 1, 3, and 4) on direct appeal or in his State Habeas Application under Article

---

[29]Court Reporter's Record, vol. 5, Docket Entry No. 12-19, pp. 6-7, 10, 13, 20, 27-28.

11.07.[30] Arguing that Morris did not exhaust state court remedies before seeking federal review as required by 28 U.S.C. § 2254(b), the respondent contends that these claims are now barred from federal review by the doctrine of procedural default.[31]

As noted above, a petitioner is required by the federal habeas corpus statutes to exhaust all state court remedies before seeking federal review. See 28 U.S.C. § 2254(b). To satisfy the exhaustion requirement the petitioner must first present his claims to the highest state court in a procedurally proper manner so that the state court is given a fair opportunity to consider and pass upon challenges to a conviction before those issues come to federal court for habeas corpus review. See O'Sullivan v. Boerckel, 119 S. Ct. 1728, 1732-33 (1999); see also Johnson v. Cain, 712 F.3d 227, 231 (5th Cir. 2013) (explaining that the exhaustion requirement found in § 2254(b) "is satisfied when the substance of the federal claim is 'fairly presented' to the highest state court on direct appeal or in state post-conviction proceedings"). The Fifth Circuit has recognized that where a petitioner lodges multiple claims for ineffective assistance of counsel each distinct allegation of ineffective assistance must be exhausted. See Jones v. Jones, 163 F.3d 285, 296-98 (5th Cir. 1998). The exhaustion requirement is not met where the petitioner presents new legal

_____

[30]Respondent's MSJ, Docket Entry No. 11, pp. 6-10.

[31]Id.

-15-

theories or factual claims in his federal habeas petition.   <u>See</u>
<u>Moore v. Quarterman,</u> 454 F.3d 484, 491 (5th Cir. 2006).

In Claims One and Four, Morris contends that his trial counsel
was ineffective for failing to object when the State called Nicole
Miller to testify solely for the purpose of impeaching her "as a
mere subterfuge to introduce inadmissible evidence during
punishment."[32] In his supporting memorandum, Morris elaborates that
his counsel should have objected to Miller's testimony on the
grounds that the State was attempting to admit evidence of an
extraneous offense that should have been excluded under Rule 403 of
the Texas Rules of Evidence because it consisted of "inadmissible
hearsay evidence" and "inadmissible victim character comparison
evidence[.]"[33]  Morris acknowledges that he did not raise these
arguments previously in state court and that these claims are
unexhausted.[34]

In Claim Three, Morris contends that his trial counsel was
ineffective for failing to conduct an independent investigation of
the facts.[35]  Morris contends that counsel was deficient because he
knew that Miller was on the State's witness list, but failed to
investigate and retrieve the statements she provided in connection

---

[32]Petition, Docket Entry No. 1, pp. 6, 7; Petitioner's
Memorandum, Docket Entry No. 2, pp. 4, 15.

[33]Petitioner's Memorandum, Docket Entry No. 2, at 4.

[34]<u>Id.</u> at 6.

[35]Petition, Docket Entry No. 1, p. 7.

with his previous conviction for assault involving domestic violence against her.[36]  Morris also contends that counsel failed to secure "video footage from the police station showing accurate footage of the alleged assault, and medical records to show pre-existing injuries of the [complainant] that the State was allowed to [attribute] to [Morris]."[37]  The state court records show that Morris previously claimed that counsel was ineffective for failing to locate Miller's previous statements, but he did not claim that his counsel was deficient for failing to obtain video footage or medical records.[38] As a result, his claim that counsel was deficient for failing to obtain video footage and medical records is unexhausted.

Because of the well-established rule in Texas that prohibits successive writ applications, Morris's failure to exhaust state court remedies when he had the chance to do so constitutes a procedural default that is adequate to bar federal review.  See Neville v. Dretke, 423 F.3d 474, 480 (5th Cir. 2005) (concluding that unexhausted claims, which could no longer be raised in state court due to Texas's prohibition on successive writs, were procedurally defaulted); see also Finley v. Johnson, 243 F.3d 215, 220 (5th Cir. 2001) (same) (citing Fearance v. Scott, 56 F.3d 633, 642 (5th Cir. 1995)).

---

[36]Id.

[37]Id.; Petitioner's Memorandum, Docket Entry No. 2, pp. 14-15.

[38]State Habeas Application, Docket Entry No. 12-24, p. 12.

-17-

Federal habeas corpus review of a defaulted claim is available only if the petitioner can demonstrate:  (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law," or (2) that "failure to consider the claims will result in a fundamental miscarriage of justice." <u>Coleman v. Thompson,</u> 111 S. Ct. 2546, 2565 (1991).  To satisfy the exception reserved for fundamental miscarriages of justice a petitioner must provide the court with evidence that would support a "colorable showing of factual innocence." <u>Kuhlmann v. Wilson,</u> 106 S. Ct. 2616, 2627 (1986).

In an effort to excuse his default, Morris invokes <u>Martinez v. Ryan,</u> 132 S. Ct. 1309 (2012), noting that he did not have the assistance of counsel on state collateral review, where Texas law requires claims of ineffective-assistance to be raised.[39]  In <u>Martinez,</u> the Supreme Court held that where state law provides that "claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." <u>Id.</u> at 1320; <u>see also Trevino v. Thaler,</u> 133 S. Ct. 1911, 1921 (2013) (recognizing that the "narrow exception" created by <u>Martinez</u> applies in Texas, where claims of

---

[39]Petitioner's Memorandum, Docket Entry No. 2, pp. 6-7.

ineffective assistance of trial counsel are precluded from direct appeal "as a matter of course").

To excuse a procedurally defaulted claim of ineffective assistance against trial counsel under this narrow exception a petitioner must show that (1) he lacked the assistance of appointed counsel during his first meaningful opportunity to raise that ineffective-assistance claim on collateral review or, if counsel was appointed, his counsel was constitutionally ineffective; and (2) the defaulted ineffective-assistance claim "is a substantial one, which is to say that the [petitioner] must demonstrate that the claim has some merit." Martinez, 132 S. Ct. at 1318. Although the record confirms that Morris represented himself on state collateral review, he does not show that the exception in Martinez applies to excuse his procedural default because he does not establish that any of his ineffective-assistance claims have merit for reasons discussed in more detail below.

## C.   The Ineffective-Assistance Claims Lack Merit

A criminal defendant's right to effective assistance of counsel is guaranteed by the Sixth Amendment. See U.S. CONST. amend. VI; McMann v. Richardson, 90 S. Ct. 1441, 1449 n.14 (1970) ("It has long been recognized that the [Sixth Amendment] right to counsel is the right to the effective assistance of counsel.") (citations omitted). Claims for ineffective assistance of counsel are governed by the standard announced in Strickland v. Washington,

-19-

104 S. Ct. 2052 (1984).   To prevail under the Strickland standard a criminal defendant must demonstrate (1) that his counsel's performance was deficient and (2) that the deficient performance resulted in prejudice.   Id. at 2064.   "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable."   Id.

"To satisfy the deficient performance prong, 'the defendant must show that counsel's representation fell below an objective standard of reasonableness.'"   Garcia v. Stephens, 793 F.3d 513, 523 (5th Cir. 2015) (quoting Strickland, 104 S. Ct. at 2064).   "This is a 'highly deferential' inquiry, attended by 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"   Id. (quoting Strickland, 104 S. Ct. at 2065).   "It is only when the lawyer's errors were so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment that Strickland's first prong is satisfied."   Buck v. Davis, 137 S. Ct. 759, 775 (2017) (citation and internal quotation marks omitted).

To satisfy the prejudice prong, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   Strickland, 104 S. Ct. at 2068.   A habeas petitioner must "affirmatively prove prejudice."   Id. at 2067.   A petitioner cannot satisfy the second prong of Strickland with mere speculation

-20-

and conjecture.  <u>See Bradford v. Whitley,</u> 953 F.2d 1008, 1012 (5th Cir. 1992).  Conclusory allegations are insufficient to demonstrate either deficient performance or actual prejudice.  <u>See Day v. Quarterman,</u> 566 F.3d 527, 540-41 (5th Cir. 2009).

### 1.   Failure to Object Based on Rule 403

In portions of Claim 1 and 4, Morris contends that his trial counsel was deficient for failing to object after the State called Nicole Miller as a witness during the punishment phase of the proceeding solely for the purpose of impeaching her testimony with a prior inconsistent statement about Morris's previous conviction for assault involving domestic violence against her.[40]  Morris contends that the State called Miller to the stand as "subterfuge" for the improper purpose of eliciting testimony about an extraneous offense, but that his trial attorney failed to object under Rule 403 of the Texas Rules of Evidence, which excludes relevant evidence where its probative value was outweighed by its prejudicial effect.[41]

Morris does not demonstrate that an objection based on Rule 403 would have been successful if one had been raised.  In

---

[40]Petition, Docket Entry No. 1, pp. 6, 7.

[41]Petitioner's Memorandum, Docket Entry No. 2, pp. 10, 16. Rule 403 of the Texas Rules of Evidence, which is identical to Rule 403 of the Federal Rules of Evidence, provides as follows:  "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following:  unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence."

response to a different objection raised by counsel, the prosecutor explained that she called Miller as a witness during the punishment phase of his trial on domestic violence charges to establish that Morris had been convicted previously of perpetrating an assault involving domestic violence against Miller.[42]   Pointing to the brutal nature of the assault and Morris's status as a repeat offender, the prosecutor noted that Miller's testimony about the underlying facts of that offense was "highly relevant" to the issue of punishment.[43]

A Texas trial court has broad discretion in determining the admissibility of evidence presented at the punishment phase of the proceedings. See Mitchell v. State, 546 S.W.3d 780, 788 (Tex. App. — Houston [1st Dist.] 2018, no pet.) (citation omitted).   "The purpose of the bifurcated trial procedure — first guilt and then sentencing — is to 'take the blindfolds off the judge or jury when it came to assessing punishment . . . thus allow[ing] evidence critical to an enlightened determination of punishment . . . .'" Ellison v. State, 201 S.W.3d 714, 718 (Tex. Crim. App. 2006) (quoting Davis v. State, 968 S.W.2d 368, 372 (Tex. Crim. App. 1998)) (alteration in original).   "Relevancy in the punishment phase is 'a question of what is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular

---

[42]Court Reporter's Record, vol. 5, Docket Entry No. 12-19, pp. 8-9.

[43]Id. at 9.

case.'" Id. at 719 (quoting Rogers v. State, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999)).

The Texas Legislature "has expressly provided that 'relevant' punishment evidence includes . . . extraneous-offense evidence." Sims v. State, 273 S.W.3d 291, 295 (Tex. Crim. App. 2008) (discussing Tex. Code Crim. Proc. art 37.07, § 3(a)(1)).[44] Thus, the prosecution is authorized to introduce the underlying facts of an extraneous offense during the punishment phase of a trial. See Sims, 273 S.W.3d at 295; see also Davis, 968 S.W.2d at 373.

In support of his contention that counsel should have raised an objection under Rule 403, Morris contends that Miller's testimony about her statements to police, which implicated him in the offense of assault involving domestic violence, was unduly prejudicial because it constituted "hearsay" in violation of "the

---

[44]See Tex. Code Crim. Pro. art. 37.07, § 3(a)(1), which provides as follows:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Pro. art. 37.07 §3(a)(1).

principle laid down in <u>Bruton v. U.S.,</u> [88 S. Ct. 1620] (1968)."[45]
Morris's argument is misplaced.  In <u>Bruton</u> the Supreme Court held
that the admission of a co-defendant's confession during a joint
trial "violated [Bruton's] right of cross-examination secured by
the Confrontation Clause of the Sixth Amendment."  <u>Id.</u> at 1622.
Aside from the fact that Miller's statements do not qualify as a
confession improperly admitted at a joint trial of co-defendants,
Morris does not demonstrate that he was denied the right to
confront and cross-examine Miller about her statements and the
record establishes that he did so.[46]  Because Morris does not show
that <u>Bruton</u> applies, he does not establish that counsel was
deficient for failing to raise this objection.  <u>See Turner v.
Quarterman,</u> 481 F.3d 292, 298 (5th Cir. 2007) (holding that
"counsel cannot have rendered ineffective assistance of counsel by
failing to make an objection that would have been meritless");
<u>Green v. Johnson,</u> 160 F.3d 1029, 1037 (5th Cir. 1998) ("[F]ailure
to make a frivolous objection does not cause counsel's performance
to fall below an objective level of reasonableness.").

Morris does not otherwise demonstrate that Miller's testimony
about the facts underlying the offense of assault involving
domestic violence was irrelevant to the punishment proceeding at
his trial for the same offense or that this evidence should have
been excluded as more prejudicial than probative.  Because Morris

[45]Petitioner's Memorandum, Docket Entry No. 2, p. 10.

[46]<u>See</u> Court Reporter's Record, vol. 5, Docket Entry No. 12-19,
pp. 13-24, 27-29.

-24-

does not establish that an objection based on Rule 403 would have
been sustained, he fails to show that his counsel was deficient or
that he was harmed as a result.   See Paredes v. Quarterman, 574
F.3d 281, 291 (5th Cir. 2009).   Accordingly, Morris does not
demonstrate that his counsel was ineffective for failing to raise
this objection and he is not entitled to relief on this claim.

### 2.    Failure to Object to Victim Character Comparison Evidence

In both Claim 1 and Claim 4, Morris argues that his trial
counsel should have objected to Miller's testimony, in which she
denied that Morris assaulted her, on the grounds that it
constituted improper "victim character comparison evidence."[47]
Morris appears to contend that he was prejudiced by his counsel's
failure to object to Miller's testimony because the prosecutor
later commented during her closing argument on punishment that
victims of domestic violence tend to minimize or "block out all the
horrific things that have been done to them."[48]   Morris contends,
therefore, that Miller's testimony should have been excluded under
Rule 403 because it allowed the prosecutor to make an improper
comparison between the complainant, Miller, and other victims of
domestic violence.[49]

---

[47]Id. at 10, 12.

[48]Id. at 11 (citing Court Reporter's Record vol. 5, p. 67,
lines 2-25, and p. 68, lines 1-8).

[49]Id. at 12.

-25-

In support of his claim that the testimony should have been
excluded under Rule 403, Morris relies primarily on <u>Mosley v.
State</u>, 983 S.W.2d 249 (Tex. Crim. App. 1998).[50]  In that case, the
Texas Court of Criminal Appeals held that "[b]oth victim impact and
victim character evidence" from close family members are admissible
during the punishment phase of a capital murder trial "to show the
uniqueness of the victim, the harm caused by the defendant, and as
rebuttal to the defendant's mitigating evidence."  <u>Id.</u> at 262.  The
Court of Criminal Appeals clarified, however, that Rule 403 limits
the admissibility of this evidence when it encourages comparisons
based upon the greater or lesser worth or morality of the victim.
<u>Id.</u>  While the Court did not articulate a bright-line rule, it
commented that "[w]hen the focus of the evidence shifts from
humanizing the victim and illustrating the harm caused by the
defendant to measuring the worth of the victim compared to other
members of society then the State exceeds the bounds of permissible

---

[50]<u>Id.</u>  Morris also references <u>Hughes v. State</u>, 4 S.W.3d 1 (Tex.
Crim. App 1999), which addressed a claim of improper impeachment
with a prior inconsistent statement "as a mere subterfuge to get
before the jury evidence not otherwise admissible," holding that
decisions about whether such impeachment was allowed were governed
by Rule 403.  <u>Id.</u> at 4 (citations omitted).  <u>See</u> Petitioner's
Memorandum, Docket Entry No. 2, p. 16.  The state court of appeals
rejected Morris's claim that the prosecutor called Miller to
testify solely for the improper purpose of impeaching her with a
prior inconsistent statement, observing that his reliance on <u>Hughes</u>
was "misplaced," because Morris did not raise a proper objection
under Rule 403 and that such an objection would have been invalid
in any event because the State was authorized to introduce
testimony related to his extraneous offense during the punishment
phase of trial.  <u>Morris</u>, 530 S.W.3d at 294-95.  Therefore, the
court does not address this argument further.

testimony."   Id.; see also Hayden v. State, 296 S.W.3d 549, 553
(Tex. Crim. App. 2009) (recognizing that victim character evidence
that is introduced for the purpose of demonstrating "a victim's
comparative worth as a human being [is] not admissible during the
punishment phase") (citing Goff v. State, 931 S.W.2d 537, 556 (Tex.
Crim. App. 1996)).

     The holding in Mosley is inapplicable because Miller's
testimony was not offered to show her character as a victim or her
comparative worth as a human being, but was offered as evidence of
an extraneous offense that Morris committed against her and the
harm inflicted by Morris during that offense.   As a result, Morris
does not demonstrate his proposed objection under Rule 403 on this
basis would have been sustained if raised at the time that Miller
was testifying.

     To the extent that Morris claims that his trial counsel should
have objected to the prosecutor's closing argument about victims
who "block out" instances of domestic violence, the record reflects
that her comments were based on evidence in the record.   The
complaining witness testified during the punishment phase that
Morris had assaulted her so many times during their relationship
she could not remember all of them, acknowledging that she had
emotionally "blocked off" certain memories of these assaults.[51]   The
prosecutor also referenced testimony from Morris's former
girlfriend, Aurtedshia Williams, who stated that she did not

_____

     [51]Court Reporter's Record, vol. 4, Docket Entry No. 12-18,
p. 109.

remember an incident in which the police were called to investigate reports of an aggravated kidnapping and observed that she was injured.[52]

Because the prosecutor's argument was based on evidence in the record or a reasonable deduction from that evidence, her comments were not improper under Texas law. See, e.g., Dorsey v. State, 209 S.W.2d 207, 209 (Tex. Crim. App. 1986) (observing that permissible areas of argument for a prosecutor include: (1) a summation of the evidence; (2) a reasonable deduction from the evidence; (3) an answer to argument of opposing counsel; and (4) a plea for law enforcement) (citations omitted). For this additional reason, Morris fails to demonstrate that counsel had, but failed to make, an objection that would have been sustained by the trial court. Accordingly, he does not demonstrate that counsel was deficient for failing to object to inadmissible victim character comparison evidence or argument and he is not entitled to relief on this claim.

### 3. Failure to Investigate or Obtain Miller's Statements

In one portion of Claim 3, Morris alleges that his trial counsel was deficient for failing to investigate Miller prior to trial to determine whether she had made prior statements that could be used to impeach her testimony.[53] This claim was raised and

---

[52]Id. at 74-75, 78.

[53]Petition, Docket Entry No. 1, p. 7; Petitioner's Memorandum, Docket Entry No. 2, p. 14.

rejected on state habeas review, where the court concluded that Morris failed to show that his counsel was ineffective under the <u>Strickland</u> standard.[54]

Where an ineffective-assistance claim was rejected by the state court, the Supreme Court has clarified that the issue on federal habeas review is not whether "'the state court's determination' under the <u>Strickland</u> standard 'was incorrect but whether that determination was unreasonable — a substantially higher threshold.'" <u>Knowles v. Mirzayance,</u> 129 S. Ct. 1411, 1420 (2009) (citation omitted). When applied in tandem with the highly deferential standard found in 28 U.S.C. § 2254(d), review of ineffective-assistance claims is "doubly deferential" on habeas corpus review. <u>Id.</u> at 1413; <u>see also Richter,</u> 131 S. Ct. at 788 (emphasizing that the standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and "'doubly' so" when applied in tandem) (citations and quotations omitted); <u>Beatty v. Stephens,</u> 759 F.3d 455, 463 (5th Cir. 2014) (same).

The state habeas corpus court rejected Morris's ineffective-assistance claim regarding counsel's failure to conduct an adequate pretrial investigation of Miller.[55] The state habeas corpus court noted that the intermediate court of appeals had already found that Miller's affidavit, which trial counsel was purportedly deficient

---

[54]Findings and Conclusions, Docket Entry No. 12-26, pp. 38, 40-41.

[55]Findings and Conclusions, Docket Entry No. 12-26, at 38.

for not retrieving before trial, was "immaterial in light of the trial testimony," and would not support a <u>Brady</u> violation.[56]   The state habeas corpus court concluded, therefore, that Morris failed to show he was "harmed by any alleged deficiency in trial counsel's pretrial investigation pertaining to the Nicole Miller statements or affidavit."[57]

A habeas corpus petitioner who alleges a failure to investigate on the part of his counsel must state with specificity what the investigation would have revealed and how it would have changed the outcome of his trial.  <u>See Miller v. Dretke,</u> 420 F.3d 356, 361 (5th Cir. 2005) (citing <u>United States v. Green,</u> 882 F.2d 999, 1003 (5th Cir. 1989)).   Morris does not make this showing here.  As noted above in connection with Morris's <u>Brady</u> claim, the record confirms that Miller, who denied that Morris assaulted her and blamed the attack on an unknown assailant, testified about the facts asserted in the affidavit that counsel allegedly failed to uncover during his pretrial investigation.[58]  Because the substance of the affidavit was presented during Miller's testimony, Morris fails to show that he was deprived of evidence material to his defense or that he was prejudiced as a result of any failure to investigate by his defense counsel.   Under these circumstances,

---

[56]<u>Id.</u> (citing <u>Morris,</u> 530 S.W.3d at 290-94).

[57]<u>Id.</u>

[58]Court Reporter's Record, vol. 5, Docket Entry No. 12-19, pp. 6-7, 10, 13, 20, 27-28.

Morris fails to show that the state habeas corpus court's decision
to reject his ineffective-assistance claim was contrary to or
involved an unreasonable application of the Strickland standard.
Therefore, he is not entitled to relief on this claim.

### 4. Failure To Investigate Video Footage and Medical Records

Morris also contends in Claim 3 that his counsel was deficient
for failing to secure "video footage from the police station
showing accurate footage of the alleged assault, and medical
records to show pre-existing injuries of the complainant[.]"[59]
Morris contends that "video surveillance from the Police
Station['s] outer perimeters which captured footage of [his]
encounter with the complainant" would have contradicted the State's
evidence.[60]  Morris contends further that "existing medical records
were not retrieved by defense counsel showing that the
complainant's injuries were not the result of the instant alleged
brutal assault."[61]

Morris does not provide video footage or medical records in
support of his claim or show that this evidence exists.  Likewise,
he does not allege specific facts showing how the alleged video
footage or medical records would have contradicted the overwhelming

---

[59]Petition, Docket Entry No. 1, p. 7.

[60]Petitioner's Memorandum, Docket Entry No. 2, p. 14.

[61]Id.

evidence introduced against him at trial, which included eye-witness testimony from individuals who saw Morris grab the complainant and force her into his car then chase her through a field after she escaped and ran inside a Family Dollar store, where surveillance footage showed him chasing her and attempting to drag her back to his car until bystanders intervened.[62]   Morris's conclusory allegations are not sufficient to demonstrate that his attorney was deficient for failing to investigate or prepare for trial.  See Day, 566 F.3d at 540-41; see also Lincecum v. Collins, 958 F.2d 1271, 1279 (5th Cir. 1992) (denying habeas relief where petitioner "offered nothing more than the conclusory allegations in his pleadings" to support claim that counsel was ineffective for failing to investigate and present evidence).   Under these circumstances, Morris does not show that he was denied constitutionally effective counsel under Strickland.

Absent a valid claim for relief, Morris does not show that he is entitled to a federal writ of habeas corpus under 28 U.S.C. § 2254(d), and his Petition must be dismissed.

---

[62]See Court Reporter's Record, vol. 3, Docket Entry No. 12-17, pp. 14-21 (testimony of Arabia Whitfield, who saw Morris chasing the complainant with his car through a grassy field until she fled into the Family Dollar store); pp. 77-78 (testimony of Sergeant Lancaster, who photographed the complainant's injuries); pp. 89-96 (testimony of the complainant, Shinika Rose, describing the assault and what happened in the store as shown on the surveillance video, which was published for the jury); pp. 105-09 (testimony of Michael Cappelli, who saw Morris grab the complainant and force her into his car).

## IV.   Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires a
district court to issue or deny a certificate of appealability when
entering a final order that is adverse to the petitioner. A
certificate of appealability will not issue unless the petitioner
makes "a substantial showing of the denial of a constitutional
right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to
demonstrate "that 'reasonable jurists would find the district
court's assessment of the constitutional claims debatable or
wrong.'" Tennard v. Dretke, 124 S. Ct. 2562, 2565 (2004) (quoting
Slack v. McDaniel, 120 S. Ct. 1595, 1604 (2000)). Under the
controlling standard this requires a petitioner to show that
"jurists of reason could disagree with the [reviewing] court's
resolution of his constitutional claims or that jurists could
conclude the issues presented are adequate to deserve encouragement
to proceed further." Buck v. Davis, 137 S. Ct. 759, 773 (2017)
(citation and internal quotation marks omitted).

A district court may deny a certificate of appealability,
sua sponte, without requiring further briefing or argument. See
Alexander v. Johnson, 211 F.3d 895, 898 (5th Cir. 2000). After
careful review of the pleadings and the applicable law, the court
concludes that reasonable jurists would not find the assessment of
the constitutional claims debatable or wrong. Because the
petitioner does not demonstrate that his claims could be resolved

-33-

in a different manner, a certificate of appealability will not issue in this case.

### V.   Conclusion and Order

The court **ORDERS** as follows:

1.    Respondent's Motion for Summary Judgment (Docket Entry No. 11) is **GRANTED**.

2.    The Petition for a Writ of Habeas Corpus By a Person in State Custody filed by Derrick Morris (Docket Entry No. 1) is **DENIED**, and this action will be dismissed with prejudice.

3.    A certificate of appealability is **DENIED**.

The Clerk shall provide a copy of this Memorandum Opinion and Order to the parties.

**SIGNED** at Houston, Texas, on this the 31st day of July, 2020.

_____

SIM LAKE

SENIOR UNITED STATES DISTRICT JUDGE
